Your Honors, good morning and may it please the Court. My name is Christopher Heldt and I'm here on behalf of the petitioner, Maggie Mu, who lives and resides in Chicago, works in Chicago, I should say, as do I. In this consolidated petition for review, there are essentially three arguments that I would like to make, really just two. The second one really evolves into the third, but we did state two issues in our briefs. The first is about standing, standing to assert an argument when a statute clearly allows a person in removal proceedings to seek review of a decision to terminate one's residency status by an immigration judge. The second concerns when a continuance can and should be granted. And the third is about one's eligibility for discretionary relief if all else fails and a person in removal proceedings wishes to return to their home country without the severe negative repercussions of a removal order. Counsel, can I just ask you real quickly, if we agree with you on the first question, is that as far as we need to go and would we just grant the petition at that point? The first issue with regard to my client having the opportunity to seek review by the IJ? Absolutely, because she never had that opportunity. So the record is completely devoid of what the potential arguments could be made, because under the federal statute here, where all aliens, any alien, I should say, I don't want to miss because it's critical, that word, any alien may seek review in removal proceedings if CIS terminates one's conditional residency status. Well, but is that the question you're really answering? Because I understand that Judge Smith's question is, if we just assume she can bring this petition, is that all we've got to decide? And I guess I'm saying to myself, I don't have any trouble with her bringing this petition because the statute's got to be interpreted, and I haven't seen it interpreted, and she may be one with appropriate standing, she may be one who can bring it, but I think there's a second question, isn't there? Does the statute allow her to do it? She can suggest, I mean, she can have standing to suggest she can bring the petition, but then somebody's got to decide whether she's right or wrong on that, isn't that correct? That's correct, Judge Smith. All right, so then standing isn't enough. What we've really got to decide is whether under the statute she should be able to bring this or not, correct? We look at this, arguing in the alternative, if she doesn't— Well, but if she's got standing to bring here, then we've got to look at the statute. Do I owe the government any deference in interpretation of this statute? Certainly, under Chevron you do, but it's not ambiguous. Why do I have to? Is it ambiguous? It's not ambiguous. Well, if it's not ambiguous, then I don't owe them any deference, do I? That's right, and that's our argument. We could rest on that right now. Well— But the question is we want to explore that. We want to look to see what the government is saying. Why are they saying that the word any alien is ambiguous? I don't know how under the realm of any stretch you could say that it would cut off derivatives, spouses, children. It says any alien. Any alien is any alien. And so it's not just any alien. The question is has your client's permanent residence status been terminated under paragraph C? It seems like it has. It has, and you're correct, Your Honor. You do have to have that second prong that it has to be terminated because it was not only terminated, but the judge bifurcated or separated the case. So she was standing there alone by herself. This young lady had no other option but to seek review under the statute, which was created explicitly for her because she's an alien. Any alien who has her conditional permanent residency terminated can seek review in removal proceedings before an immigration judge. Can I ask you—grant you that that does seem to be what the statute says, but to me it just doesn't make any sense as to why Congress would have wanted to construct a scheme like that. So maybe we just were stuck with the plain text of the statute, but if you could offer an explanation for why would Congress have wanted this— I would try. I could say if I'm the government, this is what I would say. I would say that it's not my petition. This was my father's petition. But she has to write—she's within the zone of interest. She has a right to say, you know what, my father hired ten American employees, put food, clothing, and provided opportunity. Well, the first I.J. said that it was a possibility. So they bifurcated the case. The first I.J. was transferred to another judge, and the judge said I lack jurisdiction. So we never got to that point, Your Honor. The I.J. could have said you didn't fulfill the requirements of the millionaire visa, as we call it, the I-526. You didn't hire ten full-time employees within two years, and you didn't invest a million dollars or more in a business or half a million dollars in an area that's economically depressed. Those are, generally speaking, the requirements for this millionaire visa. The father, it was approved— Let me just cut you off because you're straying away from my question. Go ahead. Let me just put it bluntly, because what I'm asking is why would Congress have wanted to create a scheme in which anyone, not just the principal entrepreneur person, but anyone, any of the derivative folks, could petition when the principal person has left and just has abandoned it, does not want to have—get review. I thought what this provision was designed to do was to attract the alien entrepreneur person. That's who we want. Yes. We'll sort of take with that person these other people, but if that person is not going to remain here and, in fact, has abandoned any effort to get review, why in the world would we give a freestanding independent right to the derivative folks to get review? Why would Congress have wanted to create that scheme? That's what I was asking you before. Because the second prong directly affects her. She's within the zone of interest. The statute explicitly states that if one's conditional residency is terminated, that alien has the right to seek review before an immigration judge. We're arguing what the potential strengths and weaknesses are of the review itself, that the argument may be weak or strong because, as you say, the father left and went back to China. But we're not there. We're putting—essentially, we're putting the carriage in front of the horse because the statute provides— I'm saying—but tell me if I'm wrong on this, because I'm not an immigration expert. But my understanding was that in pretty much every single other context except this one, maybe, the derivative status is tied 100 percent to the principal person. So if that person, for whatever reason, withdraws their application, gives up, loses, the derivative person's fate is tied to the principal person. So this just seems like an exception to that general rule, if I'm understanding the general rule right. And I don't understand why in this one narrow area would Congress have wanted to deviate from the normal scheme that we have set up. Okay. So you are correct that it's like a domino effect. If the petitioner's application fails—so, you know, the wife, for example, could not obtain a green card if the principal applicant's application was denied. But this is a situation where the principal's application was denied, and then they place the daughter in removal proceedings. Then the case is bifurcated. She's standing there alone. And we know this. The record is clear. Her father has returned to China, and now she's invoking the statute that says she's allowed to seek judicial review—I'm sorry, review in removal proceedings. And now we're at the point where we're saying, well, she's not allowed to seek review because the statute is ambiguous and it should not include her. The statute is clear. It says any alien whose residency is terminated shall seek review or may seek review in removal proceedings. So to argue the merits of the case is one thing, but the protection of the statute is quite another. And she's entitled to protection under this statute to seek review before an immigration judge. And now she's not—you know, the IJ says, no, I'm not going to review this matter. So then she's left with one option. She's left with voluntary departure at the conclusion of proceedings. And they go to the hearing. It's not even a final hearing. It's set for the filing of any and all relief. She files her own petition. It's similar to her father's, so it's denied. She goes before the immigration judge, and she says, we'd like to request post-conclusion voluntary departure under INA 240BB.  And there's really only two requirements. Voluntary departure at the conclusion of proceedings is very common. It's granted, you know, all over the United States amongst immigration courts in every courtroom. You need to be present in the United States for a year or more, and you need to demonstrate good moral character. No criminal offenses, for example, fraud, things like that, would be a slight against you. She had none of these things. The only issue she had was she was unsure if she had been in the United States for the past year. So truthfully, she says, I'm not sure. There's some back and forth, and the IJ says, you know what, you haven't demonstrated the one year. We never even got to the good moral character. So the IJ denies what's normally routinely granted. Most people in immigration court, they don't want voluntary departure unless all else fails. They do that to avoid the severe and negative repercussions of a deportation order, a removal order. So that's why they take it. Thank you for your explanation, but it raises a concern in my mind as to whether we should answer the other questions if there's enough in the record here to say, hey, by the way, she does have the right to petition, if you accept the plain language argument, but it doesn't get her anything because on the merits she can't comply with the statute. There's no question that she can't. This statute, 1886B, only allows her to make the same arguments that her father did under the I-829 petition. Isn't that correct? That's correct. So now you're saying I have a little bit of a problem with this bootstrapping argument where we have a statute that says she can actually, if it's terminated, she may request review of that determination, but you seem to be bootstrapping in another argument to say not only can she raise the I-829 argument, but she can raise any other argument for why she should be allowed to stay in the country. Well, no, she can't raise any other argument, but she can seek review of the termination. So she could ask the IJ to simply affirm the decision that was previously approved. So just rather than say that the decision was wrong and it should be reversed, she could simply ask the IJ to affirm the decision, and then she would be a lawful permanent resident, a permanent, permanent resident, because she was already a green card holder, but it was contingent on her filing another application. Her and her father had to go through one more step and file an 8-series application. That 8-series application was denied, and then her status was terminated. Then she was placed in removal proceedings. So she could go before. We're saying that she can go before the IJ. She never had that opportunity. She could go before the IJ and say, Your Honor, you should reaffirm the approval that USCIS made originally. My father did employ 10 individuals. He did invest the requisite $1 million or more into an enterprise. Right, but she's, that's the limit of the argument she can make. That would be the limit. We would feel that she would. But I don't understand why you say affirm that. They already found that he, well, reaffirm, but they already found that the father didn't comply. Well, it's a two-stage process, Your Honor. The first time they approved it, and then you have to file another petition. I see. And they deny it, and then they terminate. So the language, the logistics would be- So you're saying she has an argument that because the father initially apparently complied that she can bootstrap into the first compliance, even though apparently he didn't comply the second time. Well, USCIS, the district director made a determination that he didn't meet the requirements after the approval. So hypothetically, maybe he didn't hire 10 full-time employees or maybe he lost two employees. We don't know what the scenario is. It could be that he didn't maintain the investment, the requisite amount of the investment. We don't know. All we know is that the 8-series petition to keep it, to make it a permanent, permanent application was denied, and his status was terminated. And, of course, his wife and the daughter, their status was terminated because they were derivative applicants to the principles. And they were not allowed to appeal on their own, right? Even though they were, yes, even though they were in removal proceedings and even though the statute allows review by the IJ. So we are talking hypotheticals. We're talking about what argument she would make. So the honest truth is, the best we can do here, if we were to suggest, based on your argument, that she can make this petition herself, based on your argument of what the statute says, she would then be able to go back and make this same argument you're making, but we're not going to come any further than that, correct? That's all we're doing in this case. Well, we're arguing some issues in the alternative petition. Oh, I understand you're arguing issues in the alternative, but if we were to go your way on this issue, all those others would go away, correct? They would. She would not need voluntary departure because she would be a lawful permanent resident. You're almost out of time. Do you want to save the balance for rebuttal? I'll reserve my remaining time on rebuttal. Very good. Thank you, Your Honors. Thank you. Let's hear from the government. Welcome back. Good to see that you're doing double duty on your trip out west. Good morning again, Your Honors. May it please the Court, I'm Carmel Morgan on behalf of the respondent, the U.S. Attorney General. The government asked that you deny the petition for review. The statute at issue is, in fact, ambiguous, and so the Board reasonably looked to the regulations for clarification. Or they established the regulations for clarification. That's, well, yes. I don't think they looked to them. I think they established them and decided this is what we're going to do. The Board didn't establish the regulations. I understand. But, yes, I would agree that the regulations were probably promulgated because of some confusion as to what the statute encompasses. With regard to the phrase, any alien, I admit that on the surface it seems terribly broad. But this Court, in fact, in the Perez-Guzman case, found that the phrase, the same phrase, any alien, did, in fact, raise enough ambiguity to proceed to Chevron Step 2. It's really the context in which the phrase appears. It's not just the phrase isn't inherently ambiguous or not. It's just that the way you want us to read the statute, what it should have said is any alien entrepreneur because that's the corresponding term that's used to designate someone in the father's shoes, right? Yes, that's exactly our argument. Well, no, that seems to me the best argument that the other side has is that that word is missing from the statute. And instead it just says any alien whose status is revoked, or I'm paraphrasing, terminated under subsection C. And you would have to admit that that phrase, the full phrase, does describe the petitioner here. Her status was, in fact, terminated under subsection C. Her status was. But even within the sentence itself, it goes from any alien and at the end of the sentence to the alien. So it sort of goes from broad to narrower and is confusing. It's not very confusing if you don't put in those words you want put in. It doesn't seem confusing at all because any alien can then be the alien. You just want to add the words the entrepreneur alien and then it can get confusing. I mean, my worry about this is that I understand that you think that we should find it ambiguous. But my only worry about that is if it were that ambiguous, why is it that it says that every time and each and every time that it goes through? If you go back to, and I'll be fair, if you go back to B1C and 2, you'll come out with the same language. If you come up here now to the one we're concentrating on, we're concentrating now on a different statute and it says the same thing. But in each one of those circumstances, it seems as if it not only deals with the entrepreneur alien but all of the aliens. And so I'm trying to figure out why it's ambiguous. I did a little research. There's sort of a parallel statutory provision about removing conditions for spouses. And it does use identical language. So that would be, I guess, 8 U.S.C. 1186, just 1186, not 1186B. But it does have exactly parallel language. And I could not find any case when anyone ever attempted to use that as the spouse or a child to get review. I think the difference is that in that situation, the statute specifically addresses situations where a spouse or child could apply for a hardship waiver. And this provision for investor visas doesn't address any type of hardship. But the regulation itself does identify if the principal petitioner has passed away, if the spouse is divorced, or if the child becomes an adult, they could file an independent petition. Well, that's, I guess, you led me exactly where I wanted to go. Because it seems to me that you suggest in your regulations that there are absolutely circumstances, even if I take your approach, where the spouse can file their own, the child can file their own. Seems to me that that's a contradiction to suggesting that the statute doesn't allow the spouse to file their own or the child to file their own. I think a better way to state it wouldn't be that any alien means the alien entrepreneur, but any alien in that context means the principal petitioner. So in those exceptional circumstances, a spouse who is divorced or a child who's reached the age of maturity could file on their own and perhaps get review under that provision. But that's because they filed a principal petition of their own. The oddity about that argument, though, is that C specifically says that the BIA may terminate the permanent resident status of an alien entrepreneur, alien spouse, or alien child. So it's a bit odd to include all three of those specifically and then in the next section say any alien whose permanent resident status is terminated under subparagraph C and interpret that only to reflect the primary individual. So let me ask you this. Look, if we say this is unambiguous and we rule against the government on that, do you agree with petitioners, counsel, that that's the end of our inquiry or could we go further? I'm trying to figure out why BIA didn't. Seems to me she's been in the country for 10 years, 12 years. I mean 2007, isn't that when, was it 2007 or 2009 that the father went back to China and because he was, his status was terminated? How is she still here 10 years later and why didn't the government just find that on the merits she should be terminated as well? I think the answer to that is that the government didn't think she had standing to get reviewed. But it would be so much easier for us if we had an alternative argument to support it because it does seem that she doesn't have status to be here and yet we're not in a position on this record to make that determination if we agree with the plain language argument. I do agree with that. But isn't that the government's next argument even if we go the way the petitioner suggests? Isn't that, all we do is send it back for a hearing. Right. And at that point the government has all kinds of arguments they can make, right? Right. And you're not eliminating those arguments here today by simply arguing what you're arguing, correct? Not at all, not at all. Is it going to take another 10 years to make those arguments? I hope not. She was given very generous continuances. I think six years, maybe even seven total. She had hoped to file her own petition and did so as an investor, but that was ultimately unsuccessful. A more interesting thing to me was that it was suggested to her that she might ask USCIS if, since her father had gone back to China, she could file a petition of her own to remove conditions. And she never did so. I'm not sure because it's frankly a little unclear. I don't think Congress intended for the situation when the principal alien leaves the country for the derivatives to have standing, but it's not terribly clear. She could have sought some type of clarification but never did so. But that's really not in the record. Oh, it is in the record. What's in the record? The reasons Congress didn't do it? Oh, no, no, no, no, no. Just that it was suggested. Thank you. No, that's not in the record. I'm sorry, Your Honor. What's in the record is that it was suggested that she might have approached USCIS to ask if, under her particular circumstances, she could file her own petition. It would make more sense there because she, again, would be the principal petitioner. And I think, as Judge Watford was saying, it doesn't make sense. In this particular scheme, it's a benefit to the United States. We're looking for folks that are generating jobs. She has nothing to do with that. Well, couldn't it be as simple as in order to entice those individuals to come over and generate those jobs, we're going to give protection to the entire family and allow them to make it? I mean, Congress does all kinds of crazy things that don't make a lot of sense, but we're stuck with interpreting the language. I'm glad Judge Nelson said that, but let's go on further. However, it seems to me obvious that the government understood that having the entrepreneur come and bring his family here, there would be conditions which would come forth where the family would be given the same opportunity as would the entrepreneur because they planned for it in their regulations. That's correct. And all I'm suggesting is it seems to me that then going back and reading the statute as we must by the plain language thereof, it would seem obvious that all of those regulations would also be valid if I read it broadly rather than narrowly. Yeah, I don't think that the regulation is in conflict in any way with the statutory language. It's a supplement or clarification thereof. It's just something the government can do on its own even though Congress didn't allow it? It's gap filling when it's unclear. I understand. And I think that that was the role intended for those regulations. I have no other questions. I don't either. Okay. I think we've exhausted our questions. Thank you for your presentation. Thank you. Let's put a minute on the clock for rebuttal. Thank you. On rebuttal, again, if there's no other issues with regard to the ambiguity, I don't want to continue to assert our point. We staunchly object to any conclusion that this is a situation where it's a close call or it's unclear. Any alien means any alien. An individual that's in removal proceedings is any individual in removal proceedings, and that person would be entitled to seek review before an immigration judge. I also wanted to make some arguments with regard to voluntary departure and the passport issue or answer any questions that the Court may have about that. Well, given that the government didn't really address the issue and talked about the issue you thought was very important, do you think it's really fair to give them the business now? No. We can rest on our briefs, Your Honor. We'd like to just pinpoint certain areas in our brief that we discussed the importance of considering evidence, and we feel that the BIA did have the authority to review that or at least send it back to the IJ and say, hey, look, this lady was actually telling the truth. She wasn't lying. We have the passport. It's a slam dunk. Send it back to the IJ for a new decision. Okay. Thank you. Thank you, Counsel. The case just argued is submitted.
judges: N.R. Smith, Watford, R. Nelson